## JOSEPH E. THOMPSON

### v.

### STATE OF ILLINOIS.

#### Opinion filed November 26, 1918.

RESPONDEAT SUPERIOR—*doctrine of not applicable to State.* The doctrine of *respondeat superior* is not applicable to the State, and in the absence of an express statute the State is not liable for the torts of its officers, agents or employees.

QUARANTINE—*State officer has right to quarantine against infection disease.* The State officer acting under the police power of the State has the right to place a quarantine against infectious disease for the public good, and in so doing no liability attaches to the State in favor of a person aggrieved.

PUBLIC NUISANCE—*diseased cattle.* Cattle affected with foot and mouth disease are a public nuisance.

PRACTICE—*Par. 4 of Sec. 6, Court of Claims Act.* Par. 4 of Section. 6, does not create any new or additional liability against the State, but simply provides a remedy by which certain claims may be heard and determined, and gives this Court no power to make an award in any case unless the facts show a legal or equitable claim against the State.

Edward J. Brundage, Attorney General, for State.

This case is brought by claimant for damages alleged to be due him for loss by depreciation in weight of 618 head of sheep, which claimant in October, 1915, purchased in the West and caused to be shipped to Earlville, LaSalle County, from whence they were to be taken to his farm nearby, to feed; and later to be put into market, as they were. After the sheep were shipped from the West and before their arrival at their destination the County of LaSalle was quarantined against hoof and mouth disease. Consequently claimant was not permitted to unload his sheep at Earlville; but unloaded and took them to Somenauk in DeKalb County, the adjoining county, where he kept them several weeks, after which the quarantine was lifted and he took them home, pastured, fed and sold them in market. He claims that pasturage at Somonauk being inferior to that in his own, at his farm, the sheep rapidly depreciated in weight and health by reason of such inferior pasturage and that in consequence of which depreciation, and the death of 18 or 20 head, he claims damages in the sum of thirteen hundred ten and 93/100 ($1,310.93) dollars. The evidence, in substance, is that in October, 1915, claimant and others bought several car loads or sheep in some of the far Western states and shipped them to their homes in Illinois to put on pastures that were then green, and after a while, when the pastures were cleaned up the sheep, which were expected to

make substantial gains in weight, were to be sold on the market with the expectation of making a profit on the gain in weight.

That after they were shipped and were in transit from the West, and before their arrival at their destination, Earlville, in LaSalle County, Illinois, which is a few miles from the home of claimant, a quarantine was placed upon certain territory embracing LaSalle County, on account of alleged prevalence of hoof and mouth disease, and claimant was forbidden by the State authorities to ship or unload his sheep in LaSalle County; but unloaded them in the adjoining county and there kept them on the fairground at Somonauk for several weeks.

Claimant alleges and testified that the Chairman of the State Board of Live Stock Commission told him during first week after the sheep were unloaded that he would soon be permitted to take his sheep home to his farm. That said sheep were not permitted to be taken into LaSalle County to claimant's home till October 27th, 1915.

By that time the frosts had killed claimant's pasture and the sheep had fallen off in weight, and lost in consequence of inferior pasture at the fairgrounds at Somonauk. The sheep were subsequently sold in market, at three different times.

The shipment he made in January, 1917, were sold on same day, in same market in which one Ole Benson sold his sheep, which were a part of the same sheep that were shipped from the West with claimant's sheep, and they brought some $2.00 a head more than claimant's sheep.

And by comparison of prices of his and Benson's sheep he reaches the conclusion that he lost $2.00 per head all told on his sheep.

The State demurs and claims it is not liable, first, because the doctrine of *respondeat superior* is not applicable to the State; second, that in the absence of statute, the State is not liable for the torts of its officers, agents or employees; third, the claim is barred by the statute of limitations.

The evidence discloses the fact that something like a year before this the hoof and mouth disease had been prevalent in LaSalle County and that the county had been quarantined. Also a case or two had been reported in said county a few days before the sheep arrived from the West and the county was again quarantined by legal authorities, and under the rules claimant could not for some three (3) weeks ship his sheep into LaSalle County. Claimant endeavors to show that there was no necessity for the quarantine. There is no doubt of the presence of the disease in LaSalle County at time of quarantine and the State not only had a right, but it was the duty of the proper officers to place a quarantine when they had reasonable grounds to suspicion the presence of infectious diseases, as the hoof and mouth disease, in any county or territory.

The foot and mouth disease is regarded as very dangerous and cattle affected with it become a public nuisance. *Durand v. Dyson*, 271 Ill. 382.

Under the police power the State had a right to place the quarantine as it did in the present instance and no individual has a right to complain, when the act was for the public good.

Hurd's Revised Statute, Chapter 8, Paragraph 48.

The damage, if any, that may have resulted to claimant by reason of the establishment of the quarantine was unavoidable and only incidental, and perhaps the same complaint might be made by others, but private interests are subordinate to public rights, and under such circumstances, as in the case at bar the individual cannot complain, unless there is an express provision in the Statute giving him a remedy. And in this class of cases there is no statutory provision for compensation claimed.

The State Board of Live Stock Commissioners, in placing the quarantine, honestly acted in the interest of the public and are presumed to have acted intelligently in the premises.

But in the event they had acted carelessly or without cause, in laying the quarantine the State under the doctrine that *respondeat superior* does not apply, and that the State in the absence of statute is not liable for the torts of its officers, agents or employees.

*Henke* v. *State of Illinois,* No. 2 Court of Claims, page 11 and cases therein cited, attorney for claimant insists that this Court under the Act of 1917 is vested with a more comprehensive jurisdiction than the same Court had prior thereto and cites section 6, paragraph 4, which provides:

"To hear and determine all claims and demands, legal and equitable, liquidated, ex contracto ad ex delicto, which the States as a sovereign commonwealth, should in equity and good conscience discharge and pay."

Paragraph 4, of section 6 does not in our opinion create any new or additional liabilities against the State; but simply provides a remedy by which claims may be heard and this Court has no power to make an award in any case unless the facts show a legal or equitable claim against the State. *Schmitt* v. *State.* 1, Court Claims 76.

In view of the foregoing it is unnecessary for the court to pass upon other questions raised by the State, and the demurer is sustained and claim disallowed and cause dismissed.